Court Use only above this line.

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE

AIA ENGINEERING LIMITED
Plot No. 115
Gujarat Vyapari Maha Mandal
Industrial Estate
Odhav Road
Ahmedabad 38240
Gujarat, India

Plaintiff,

vs.

MAGOTTEAUX INTERNATIONAL S/A
Rue A. Dumont
Vaux-sous-Chèvremont
RPM Liege – Belgium 405,785,543,

and

MAGOTTEAUX, INC.
725 Cool Springs Boulevard
Franklin, Tennessee 37067

Defendant.

Civil Action No.

**COMPLAINT**

This is a claim of declaratory judgment of non-infringement, invalidity, and unenforceability under 28 U.S.C. § 2201, *et seq.*

Plaintiff AIA Engineering Limited ("AIA") brings this action against defendant Magotteaux International S/A ("Magotteaux"), and allege as follows:

## NATURE OF THE ACTION

1. This lawsuit seeks to establish AIA's right to manufacture, import into the United States and sell products alleged by Magotteaux to infringe its United States patent. AIA seeks a declaratory judgment that the AIA products which Magotteaux has accused of infringing its patent in fact do not infringe any valid and enforceable claim, and that the patent is invalid and unenforceable. There is an actual and justiciable controversy between AIA and Magotteaux, and Magotteaux's conduct has (and continues to) put AIA under a reasonable and serious apprehension of imminent suit. The dispute is therefore properly before this Court.

## THE PARTIES

2. AIA is a corporation organized and existing under the laws of India, with its principal place of business in Ahmadabad, India. Vega Industries, Ltd ("Vega"), not a party to this action, is the United States sales and distribution entity for AIA, and is located at 5106 Herschel Spears Circle, Brentwood, Tennessee, 37027.

3. On information and belief, Magotteaux International S/A is a corporation incorporated under the laws of Belgium, with its principal place of business in Vaux-sous-Chèvremont, Belgium.

4. On information and belief, Magotteaux, Inc. is a corporation organized under the laws of Delaware, with its principal place of business at 725 Cool Springs Boulevard, Suite 200, Franklin, Tennessee, 37067. On information and belief, Magotteaux, Inc. is a wholly owned subsidiary of Magotteaux International S/A.

## JURISDICTION AND VENUE

5. This action arises under the patent laws of the United States, Title 35 of the United States Code, and the Declaratory Relief Act, 28 U.S.C. § 2201 et seq., for the purpose of determining an actual and justiciable controversy between the parties hereto.

6. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1338(a) and 2201(a).

7. This Court has personal jurisdiction over Magotteaux International S/A and Magotteaux, Inc. by virtue of Magotteaux International, S/A and Magotteaux, Inc. having purposefully availed themselves of the jurisdiction of the State of Tennessee and this District. In addition or in the alternative, on information and belief this Court has personal jurisdiction over Magotteaux International S/A and Magotteaux, Inc. under Federal Rule of Civil Procedure 4(k)(1)-(2). The causes of action in this complaint arise under federal law.

8. Upon information and belief, Magotteaux International S/A is the owner of the domain name www.magotteaux.com that is accessible throughout the world and in the State of Tennessee and in this District. On www.magotteaux.com Magotteaux International S/A advertises for sale its products and services under the heading "Products & Services." Magotteaux International S/A can be contacted from anywhere in the world through its website. According to www.magotteaux.com, Magotteaux, Inc. is part of Magotteaux International S/A's sales network and is listed as part of Magotteaux International S/A's corporate structure. Under the "Find Us" section of Magotteaux International S/A's website a world map is displayed having concentric circles in North America, the dot at the center of which if clicked upon will display Magotteaux, Inc. Additionally, at www.magotteaux.com, under the heading "Corporate Information" and the subheading "Production Units," a world map is displayed having concentric circles in North America, the two icons at the center of which if clicked upon will display a "Pulaski, TN" production unit. As a result, Magotteaux International, S/A and

Magotteaux, Inc. regularly transact or attempt to transact business in the state of Tennessee and in this District.

9. Magotteaux International S/A has applied for and obtained patent rights in the United States. Magotteaux International S/A has previously and recently invoked the jurisdiction of the United States District Court for the Middle District of Tennessee in an action to enforce the patent at issue in this suit in cause number 3:08-cv-00989. On information and belief, Magotteaux International S/A has on-going dealings with its subsidiary Magotteaux Inc. in the state of Tennessee and in this District and has directly conducted business in the state of Tennessee and in this District, including but not limited to travel by officers and employees to supervise and assist in the development and manufacture of products allegedly within the scope of the patent at issue in this suit, the shipment of materials for use in products allegedly within the scope of the patent at issue in this suit, and the transfer of technology allegedly within the scope of the patent. Defendant Magotteaux, Inc. is registered to do business in Tennessee and maintains its principal place of business in and is a resident of the Middle District of Tennessee.

10. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)-(d). Defendant Magotteaux International S/A is an alien corporation without residency in any state. Defendant Magotteaux, Inc. is registered to do business in Tennessee and maintains its principle place of business in and is a resident of the Middle District of Tennessee.

## BACKGROUND

11. AIA is in the business of designing, developing, manufacturing, installing and servicing high chromium wear, corrosion and abrasion resistant products used in cement, mining and thermal power generation industries. AIA provides such products and services both for domestic use in India and internationally. One class of AIA's products is parts of machines or other devices that come into contact with abrasive materials, such as rock or other hard, abrasive substances (hereinafter sometimes referred to as "wear components"). These parts include those

sold under the Sintercast mark. These Sintercast products contain portions which are resistant to wear as a result (among other things) of the inclusion of certain combinations of metal oxide ceramics. Vega is the exclusive distributor in the United States of AIA wear components.

12.  Magotteaux also produces products which compete with AIA's wear components. For simplicity, these too will be referred to hereinafter as "wear components," even though their composition may not be exactly the same.

13.  Magotteaux asserts ownership of United States Reissue Patent No. 39,998 entitled "Composite Wear Component," which reissued on January 8, 2008 ("the '998 patent"). (A copy of the '998 patent is attached hereto as Exhibit 1.) The '998 reissue patent was preceded by U.S. Patent No. 6,399,176 ("the '176 patent"). (A copy of the '176 patent is attached hereto as Exhibit 2.) There are also foreign counterparts to these patents in various other countries, including India and Europe.

14.  A dispute has arisen between AIA and Magotteaux regarding whether AIA's wear component products infringe any valid and enforceable claim of the '998 patent. The dispute has its origins, in part, in a joint venture collaboration between Magotteaux and Mr. Bhadresh Shah that began in about November 1990 and continued until its termination in about February 2000 via a Settlement Deed, which formally ended the joint venture and separated the entity now known as AIA under the principal ownership of Mr. Shah. In the most recent manifestation of the dispute, however, Magotteaux has accused AIA of having wear component products that infringe its patents in various jurisdictions.

15.  One of those jurisdictions was India. There, AIA challenged the scope and validity of Magotteaux's Indian patent, both in response to an infringement suit by Magotteaux against AIA and via the Indian patent office. Magotteaux has since unconditionally withdrawn its Indian patent lawsuit against AIA, without leave to re-file a new suit on the same subject

matter. Further, Magotteaux's Indian patent remains under challenge in the appropriate courts and agencies in India with responsibility for patents there.

16. In the United States, on or about March 24, 2008, Magotteaux filed a complaint before the International Trade Commission ("ITC") claiming that the wear component products of AIA and one other respondent, Fonderie Acciaierie Roiale SPA ("FAR"), infringed the '998 patent. The ITC initiated an investigation on April 25. 2008.

17. In response to the investigation, AIA filed an action in India seeking an anti-suit injunction against Magotteaux prohibiting it from proceeding in the ITC against AIA and Vega. In that Indian action, AIA obtained an ad interim ex parte order barring Magotteaux from proceeding against AIA and Vega before the ITC pending further proceedings in that lawsuit or trial. The order, however, was preliminary and it also did not require dismissal of AIA and Vega from the ITC proceedings. To maintain a position consistent with the Indian anti-suit injunction, AIA and Vega ceased all participation in the ITC proceeding while the anti-suit injunction was being litigated in the Indian courts.

18. Eventually, on or about November 14, 2008, an Indian appellate court dissolved the temporary anti-suit injunction and remanded to the lower court to consider the matter after a fuller presentation of evidence. That ruling of the Indian appellate court was reviewed and upheld by the Indian Supreme Court on December 18, 2008. The Indian action pertaining to the anti-suit injunction and Magotteaux's compliance or contempt of that injunction remains pending in India. However, the removal of the temporary injunction created practical procedural difficulties for AIA and Vega in connection with the ITC proceeding. In sum, while they vigorously contested both infringement and validity with respect to the '998 patent, it became clear that AIA and Vega would not be in a position to fully defend themselves before the ITC.

19. Magotteaux continues to maintain that AIA's wear component products infringe the '998 patent. AIA and Vega continue to dispute this and contend that the '998 patent is

invalid and that AIA and Vega do not produce or sell a product that infringes any valid and enforceable claim of the '998 patent. This dispute is on-going and adversely effects AIA's and Vega's business in the United States with respect to those particular products.

**COUNT I**

**(Declaratory Judgment of Non-infringement)**

20. Paragraphs 1 through 19 are incorporated by reference as if stated fully herein.

21. Plaintiffs have not directly infringed, indirectly infringed, contributed to or induced the infringement of any valid and enforceable claim of the '998 patent, either literally or under the doctrine of equivalents, and Plaintiffs have not otherwise committed any acts in violation of 35 U.S.C. § 271.

22. Plaintiffs seek a declaration that the '998 patent has not been, and is not, infringed by any of AIA's or Vega's products.

**COUNT II**

**(Declaratory Judgment of Invalidity)**

23. Paragraphs 1 through 19 are incorporated by reference as if stated fully herein.

24. The claims of the '998 patent are invalid, void and/or unenforceable for failure to meet all of the statutory prerequisites of Title 35 of the United States Code, including without limitation one or more of 35 U.S.C. §§ 101, 102, 103, 111, 112, 116, 119, 132, 251 and 252.

25. Plaintiffs seek a declaration that the claims of the '998 patent are invalid.

**COUNT III**

**(Declaratory Judgment of Unenforceability)**

26. Paragraphs 1 through 19 are incorporated by reference as if stated fully herein.

27. The claims of the '998 patent are unenforceable under the doctrine of file wrapper estoppel and other aspects of the file history of the '998 patent, including without limitation,

arguments, amendments and/or other interactions in connection with the prosecution history of the '998 reissue patent and/or any related patents and patent applications.

28. Plaintiffs seek a declaration that the '998 patent is unenforceable.

**RELIEF SOUGHT**

WHEREFORE, Plaintiffs respectfully request that the Court:

1. Enter an order declaring that AIA's and Vega's products have not, and do not, infringe any valid and enforceable claim of the '998 patent;

2. Enter an order declaring that the claims of the '998 patent are invalid;

3. Enter an order declaring that the '998 patent is unenforceable;

4. Enter an order that Magotteaux is estopped from asserting or maintaining any action against AIA or Vega for infringement of the '998 patent and/or any related patents and patent applications.

5. Enter an order declaring this an exceptional case pursuant to 35 U.S.C. § 285, and awarding Plaintiffs their attorney fees, costs, and expenses; and

6. Grant Plaintiffs such other and further relief as may be just and appropriate.

Dated: March 16, 2009

Respectfully submitted,

Edward Lanquist, (BPR 13303)
Waddey & Patterson, P.C.
1600 Division Street, Suite 500
Nashville TN 37203
edl@iplawgroup.com

David Lieberworth, WSBA #9329
dlieberworth@gsblaw.com

Jared Van Kirk, WSBA #37029
jvankirk@gsblaw.com

Garvey Schubert Barer
1191 Second Avenue, 18th Floor
Seattle, Washington 98101
*[Admission Pro Hac Vice Pending]*

Attorneys for Plaintiff AIA Engineering Limited