IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

|  |  |
|---|---|
| AIA ENGINEERING LIMITED, ) | |
| ) | |
| Plaintiff/Counterclaim Defendant, ) | |
| ) | |
| v. ) | |
| ) | |
| MAGOTTEAUX INTERNATIONAL S/A ) | |
| & MAGOTTEAUX, INC., ) | |
| ) | |
| Defendant/Counterclaim Plaintiffs. ) | |
| ) | No. 3:09-cv-00255 |
| ) | Chief Judge Haynes |
| MAGOTTEAUX INTERNATIONAL S/A ) | |
| & MAGOTTEAUX, INC. ) | |
| ) | |
| Third Party Plaintiffs, ) | |
| ) | |
| v. ) | |
| ) | |
| VEGA INDUSTRIES, LTD. INC., ) | |
| ) | |
| Third Party Defendant. ) | |

**MEMORANDUM**

Plaintiff, AIA Engineering Limited ("AIA"), an Indian corporation, filed this action under 28 U.S.C. § 2201, et seq., the declaratory judgment statute against the Defendants: Magotteaux International S/A, a Belgian corporation, and Magotteaux, Inc., an affiliated Tennessee corporation (collectively, "Magotteaux"). AIA sought declaratory judgment that its products did not infringe Magotteaux's U.S. Patent No. RE 39,998 (the "998 patent"), a reissue patent based upon Magotteaux's earlier U.S. Patent No. 6.399,176 B1 (the "176 patent") as well as a declaration of the

1

invalidity and unenforceability of the '998 patent. In response to Plaintiff's action, Magotteaux filed a third party complaint for patent infringement against AIA and Vega Industries, Ltd., (collectively, "AIA") an AIA subsidiary with its principal place of business in Brentwood, Tennessee that sells and distributes AIA's products in the United States. This Court has subject matter jurisdiction over the action under 28 U.S.C. §§ 1331 and 1338(a).

AIA moved for summary judgment and the Court awarded AIA declaratory judgment that Magotteaux's '998 patent was invalid under 35 U.S.C. § 251 for impermissibly recapturing subject matter surrendered during reissue examination. (Docket Entry No. 170). Magotteaux appealed the Court's ruling. (Docket Entry Nos. 173 & 182). The Federal Circuit reversed and remanded the Court's grant of summary judgment on the basis that the Court "erred in construing the claim term 'solid solution,' and thus erred in determining that the reissued claims impermissibly recaptured surrendered subject matter."AIA Eng'r Ltd. v. Magotteaux Intern. S/A, 657 F.3d 1264, 1268 (Fed. Cir. 2011).

This action proceeded to trial and at the end of the proof, AIA moved for judgment as a matter of law under Federal Rule of Civil Procedure 50(a). (Docket Entry No. 438, Trial Transcript at 68). AIA's motion asserted two grounds: (1) lack of proof of wilfulness; and (2) Section 271(f) infringement claim. Id. The Court reserved ruling on AIA's motion. Id. at 86. The jury returned a verdict in favor of Magotteaux. The jury found:

> 1. Magotteaux established by a preponderance of the evidence that AIA infringed all of the claim of Magotteaux's '998 patent.
>
> 2. AIA did not establish by clear and convincing evidence that any of the claims of Magotteaux's '998 patent is invalid as obvious.
>
> 3. AIA did not establish by clear and convincing evidence that any of the claims of

2

Magotteaux's '998 patent is invalid as a result of a prior public use.

4. AIA should pay Magotteaux $1,668,028.00 in damages upon finding that AIA infringed any of the claims of the '998 patent and upon finding that AIA failed to prose that each of such infringed claims is invalid.

5. Magoteaux established by clear and convincing evidence that AIA's infringement was willful because "given the emails between Chris Carr (Treibacher) and Dr. Bhide regarding the purchase of grains and their classifications. Additionally, Dr. Bhide's email suggested that he wanted to 'completely suppress [his] identity' and [the jury] believ[ed] AIA was fully aware of both the Xwinn techonology and the patents, in place, but continued to pursue and engage in producing/selling the SinterCast products."

(Docket Entry No. 388, Jury Verdict at 1-3).

On July 3, 2012, in accordance with the jury's verdict, the Court entered judgement against AIA in favor of Magotteaux. (Docket Entry No. 390). Subsequently, the Court found that AIA "wilfully violated [Magotteaux's] patent rights" and awarded Magotteaux enhanced damages of $3,336,056.00 pursuant to 35 U.S.C. § 284. (Docket Entry No. 390). Additionally, the Court found the case "exceptional" and awarded Magotteaux "reasonable attorneys fees" pursuant to 35 U.S.C. § 285. (Docket Entry No. 390).

Magotteaux then moved for an award of prejudgment interest, post-judgment interest and attorneys' fees and costs in an amount totaling $3,851,906.91 (not including post-judgment interest). (Docket Entry Nos. 396 & 398). AIA opposed Magotteaux's motions for prejudgment interest and attorneys' fees and costs. (Docket Entry Nos. 436 & 437). AIA is also taxed with costs in this action. (Docket Entry No. 446). AIA moved to stay execution of the judgment in this action and any proceedings to enforce the judgment. (Docket Entry No. 409). AIA filed for judgment as a matter of law pursuant to Rule 50 and for a new trial pursuant to Rule 59. (Docket Entry Nos. 407, 408, 410, 411 & 412). The Court ordered a stay of proceedings to enforce judgment pending disposition

of post trial motions pursuant to Rule 62(b). (Docket Entry No. 452).

Of the motions before the Court, the Court first addresses AIA's motion for judgment as a matter of law and an amended judgment or, in the alternative, for a new trial on the issue of willfulness and exceptional case. (Docket Entry No. 407). Magotteaux opposes this motion. (Docket Entry No. 457).

## A. AIA's Rule 50(b) Motion on Willfulness

### 1. Standard of Review under Rule 50(b)

For a Rule 50 motion, the Court reviews the evidence in the light most favorable to the nonmoving party. Wilcox v. Tricam Indus., No. 1-08-0030, 2010 U.S. Dist. Lexis 51104, at *3 (M.D. Tenn. May 21, 2010) (citing Reeves v. Sanders Plumbing Prods., Inc., 530 U.S. 133, 150 (2000)). Yet, the Court cannot "reweigh the evidence or assess the credibility of witnesses" because the "review is restricted to the evidence that was admitted at trial." Sykes v. Anderson, 625 F.3d 294, 305 (6th Cir. 2010) (citing Radvansky v. City of Olmsted Falls, 496 F.3d 609, 614 (6th Cir. 2007) and Fed. Prac. & Proc. 2540 (3d ed. 2008)). Under Rule 50(b),

> If the court does not grant a motion for judgment as a matter of law made under Rule 50(a), the court is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion. No later than 28 days after the entry of judgment – or if the motion first addresses a jury issue not decided by a verdict, no later than 28 days after the jury was discharged – the movant may file a renewed motion for judgment as a matter of law and may include an alternative or joint request for a new trial under Rule 59. In ruling on the renewed motion, the court may: (1) allow judgment on the verdict, if the jury returned a verdict; (2) order a new trial; or (3) direct the entry of judgment as a matter of law.

Fed. R. Civ. P. 50(b)(1)-(3). Accordingly, the Court considers AIA's Rule 50(b) motion by reviewing the evidence in the record in the light most favorable to Magotteaux.

4

## 2. Waiver of Claims under Rule 50(b)

A Rule 50(b) motion may only be renewed on the grounds raised in an earlier Rule 50(a) motion at the close of the evidence and "'is not available . . . on an issue not brought before the court prior to the submission of the case to the jury.'" Wilcox, 2010 U.S. Dist. Lexis 51104 at *5 (quoting Ford v. Cnty. of Grand Traverse, 535 F.3d 483, 491 (6th Cir. 2008)). "[A]lthough '[a] post trial motion for judgment may not advance additional grounds that were not raised in the pre-verdict motion,' a party is not required to state the grounds for judgment with 'technical precision.'" Ford, 535 F.3d at 492 (quoting Kusens v. Pascal, Co., 448 F.3d 349, 361 (6th Cir. 2006)). As such, "where Rule 50(a)'s purpose – i.e., providing notice to the court and opposing counsel of any deficiencies in the opposing party's case prior to sending it to the jury – has been met, courts usually take a liberal view of what constitutes a pre-verdict motion sufficient to support a post-verdict motion." Ford, 535 F.3d at 492-93 (quoting Kusens, 448 F.3d at 361).

Here, Magotteaux asserts that AIA "failed to raise noninfringment, prior public use, and its alleged Indian University testing as substantive contentions for its preverdict motion, and accordingly, none are subject to a renewed [judgment as a matter of law]" motion. (Docket Entry No. 457 at 4). AIA asserts that in its Rule 50(a) motion at the end of the trial,

> AIA's counsel specifically referenced . . . AIA's 'earlier briefing' on the issue of willful infringement. . . . [that] included AIA's motion *in limine* to exclude evidence and argument solely directed to the issue of willful infringement, which identified the 'other indicia' of AIA's lack of recklessness including the reasonable invalidity claims based on obviousness and public use, and AIA's noninfringement defenses. . . . AIA's counsel further referenced, . . . this Court's earlier order granting AIA's motion *in limine* to exclude evidence and argument directed solely to the issue of willful infringement. All of this satisfied the requirement of Rule 50 that the moving party articulate in its preverdict motion the basis on which a judgment as a matter of law might be rendered in its post trial motion.

(Docket Entry No. 461-1 at 3) (citing Fed. R. Civ. P. 50, advisory committee note to 1991 amendment to Rule 50) ("[t]he information required with the motion may be supplied by explicit reference to materials and arguments previously supplied to the court")).

The Court concludes that AIA properly preserved its claims on willfulness and the section 217(f) infringement claim when AIA moved for judgment as a matter of law under Rule 50(a) at the end of trial. In its earlier motion, AIA put Magotteaux on notice of the basis for its Rule 50(b) motion for judgment as a matter of law. See (Docket Entry No. 438, Trial Transcript at 68-86). AIA's arguments in support of its Rule 50(a) motion are sufficient to preserve the claim that there is no evidence sufficient to establish a willfulness finding and the Court concludes that AIA did not waive its Rule 50(b) arguments regarding non-infringement, prior public use, and Indian University testing, but only as to the finding of willfulness.

### 3. Finding of Willfulness under Section 284

Awarding enhanced damages under 35 U.S.C. § 285 requires a finding of willful infringement. Bard Peripheral Vascular, Inc. v. W.L. Gore & Associates, Inc., 682 F.3d 1003, 1005 (Fed. Cir. 2012). In In re Seagate Technology, LLC, 497 F.3d 1360 (Fed. Cir. 2007), the Federal Circuit "[held] that proof of willful infringement permitting enhanced damages requires at least a showing of objective recklessness." Id. at 1371. The Seagate test is a "two-pronged test for establishing the requisite recklessness" for an award of enhanced damages under section 284. Bard, 682 F.3d at 1005.

> (1) a patentee must show by clear and convincing evidence that **the infringer acted despite an objectively high likelihood that its actions constituted infringement of a valid patent.** . . . The state of mind of the accused infringer is not relevant to this objective inquiry; and
>
> (2) If this threshold objective standard is satisfied, the patentee must also demonstrate

6

> that **this objectively-defined risk (determined by the record developed in the infringement proceeding) was either known or so obvious that it should have been known to the accused infringer.**

Seagate, 497 F.3d at 1371 (emphasis added); see also Uniloc USA, Inc. v. Microsoft, Corp., 632 F.3d 1292, 1310 (Fed. Cir. 2011) (noting the first prong is an objective standard and the second prong is a subjective standard).

Recently, in Bard Peripheral Vascular, Inc. v. W.L. Gore & Associates, Inc., 682 F.3d 1003 (Fed. Cir. 2012), the Federal Circuit explained "generally, the 'objective prong of Seagate tends not to be met where an accused infringer relies on a reasonable defense to a charge of infringement.'" Id. at 1005 (quoting Spine Solutions, Inc. v. Medtronic Sofamor Danek USA, Inc., 620 F.3d 1305, 1319 (Fed. Cir. 2010)).

> That determination entails an object assessment of potential defenses based on the risk presented by the patent. Those defenses may include questions of infringement but also can be expected in almost every case to entail questions of validity that are not necessarily dependent on the factual circumstances of the particular party accused of infringement.

Bard, 682 F.3d at 1006. "If the accused infringer's position is susceptible to a reasonable conclusion of no infringement, the first prong of Seagate cannot be met." Uniloc, 632 F.3d at 1310.

The Bard court compared the objective reckless determination to an objective baseless analysis for an exceptional finding under 35 U.S.C. § 285.

> Our holding is consistent with similar holdings in other parallel areas of law. Our precedent regarding objectively baseless claims, which allow courts to award enhanced damages and attorneys' fees under 35 U.S.C. § 285, and the Supreme Court's precedent on 'sham' litigation are instructive.
>
> For example, in iLOR, LLC v. Google, Inc., 631 F.3d 1372 (Fed.Cir.2011), in addressing the standard for showing objective baselessness for purposes of § 285, a standard which this court explained was '**identical to the objective recklessness standard for enhanced damages and attorneys' fees against an accused infringer for § 284 willful infringement actions under [ Seagate ],**' id. at 1377, this court

> noted that 'Section 285 must be interpreted against the background of the Supreme Court's decision in' Professional Real Estate Investors, Inc. v. Columbia Pictures Industries, Inc. (" PRE "), 508 U.S. 49, 113 S.Ct. 1920, 123 L.Ed.2d 611 (1993). iLOR, 631 F.3d at 1376. PRE dealt with immunity from antitrust liability for bringing lawsuits, which is granted unless the litigation is considered a sham. 508 U.S. at 51, 113 S.Ct. 1920. It held that a suit will not be considered sham litigation unless the lawsuit is 'objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits. If an objective litigant could conclude that the suit is reasonably calculated to elicit a favorable outcome,' it is not objectively baseless. Id. at 60, 113 S.Ct. 1920. And like willfulness, there is a subjective requirement that must be addressed only after the objective requirement is satisfied. Id.

Bard, 682 F.3d at 1007-08 (emphasis added).

AIA contends that jury's findings are "insufficient . . . to support a finding of wilfulness because the threshold question of whether a reasonable person would have considered there to be a high likelihood of infringement of a valid patent should always be decided as a matter of law by the judge." (Docket Entry No. 407-1 at 3). Yet, here, the Court found that it was a mixed question of fact and law and submitted the question of willfulness to the jury as appropriate under Bard. (Docket Entry No. 438, Trial Transcript at 81). "Bard contemplates a decision on the objective prong **after** the jury has deliberated on other aspects of willfulness." Cook Inc. v. Endologix, Inc., No. 1:09-cv-01248, 2012 WL 3779198, at *2 (S.D. Ind. Aug. 30, 2012). Bard instructs the Court:

> When a defense or noninfringement theory asserted by an infringer is purely legal (e.g. claim construction), the objective recklessness of such a theory is a purely legal question to be determined by the judge. When the objective prong turns on fact questions, as related, for example, to anticipation, or on legal questions dependent on the underlying facts, as related, for example, to questions of obviousness, the judge remains the final arbiter of whether the defense was reasonable, even when the underlying fact question is sent to a jury.

Bard, 682 F.3d at 1007.

Thus, the Court is the final arbiter and reviews AIA's claims and defenses to "determine, ' based on the record ultimately made in the infringement proceedings,' whether a 'reasonable litigant

could realistically expect' those defenses to succeed." Bard, 682 F.3d at 1008 (citing iLOR, 631 F.3d at 1378 and PRE, 508 U.S. at 60).

Magotteaux contends that the "sheer diversity and volume of competing invalidating defenses offered by AIA - obviousness, anticipation, fraud, indefiniteness and recapture collectively dilute any 'objectively reasonable' claim by AIA." (Docket Entry No. 457 at 6). AIA asserts that Magotteaux failed to meet its burden to prove by clear and convincing evidence that AIA acted despite an objectively high likelihood that its actions constituted infringement. In particular, AIA asserts that "throughout the course of this litigation [it has] maintained a non-infringement defense and additional invalidity arguments . . . [and] [t]hat those issues were put to the jury is at least some indication of their objective reasonableness." (Docket Entry No. 407-1 at 6-7).

Yet, "[t]he mere existence of a defense cannot preclude that possibility of an objectively high likelihood of infringement. Indeed, those who knowingly infringe a patent presumably attempt to manufacture defenses, however contrived and unavailing they may prove." Tomita Techs. USA, LLC v. Nintendo Co., Ltd.; No. 11-Civ-4256(JSR), 2012 WL 2524770, at *9 (S.D. N.Y. June 26, 2012) ("conclud[ing] that a reasonable jury could find, based on clear and convincing evidence, that Nintendo's defenses are so unpersuasive that an objectively high likelihood of infringement in fact exists. . . . [the] defenses rel[ied] on strained interpretations of the . . . patent."); see also i4i Ltd. Partnership v. Microsoft Corp., 598 F.3d 831, 860 (Fed. Cir. 2010) affirmed – U.S. – , 131 S. Ct. 2238 (2011).

Regarding AIA's non-infringement claim, AIA contends that its non-infringement claim was reasonable during the life of the '176 patent. AIA asserts that its non-infringement theory is supported in the fact that it was physically impossible to make a "solid solution" like that identified

9

in Claim 1 of the '176 patent. (Docket Entry No. 407-1 at 7). In addition, AIA asserts that there was no objectively high likelihood of infringement because "before the '176 patent issued in June 2002, AIA's allegedly infringing product was known to contain a third component, titanium oxide.... [a]t that time, an objective observer would reasonably believe that with this third component the AIA product would not meet the limitation of the '176 patent." Id. at 8. Lastly, AIA contends that its non-infringement claim is reasonable in light of AIA's "invit[ing] a representative of [Magotteaux] to its plant to see its product and processes." Id.

Yet, the Court concludes that in light of the evidence presented at trial, a reasonable litigant could not expect AIA's claims of non-infringement to succeed. Much of AIA's evidence on its claim contradicted the Federal Circuit's finding that the terms used in the '176 and '998 patents, "homogenous solid solution" and "homogenous ceramic solution" are synonymous. AIA Eng'r Ltd., 657 F.3d at 1268. The Federal Circuit's ruling reflects the unreasonableness of AIA's theory of non-infringement. In addition, a reasonable litigant would not rely on a defense of non-infringement when it was aware that the opposing party's patented components were the same components used by the litigant. Moreover, the International Trade Commission had already ordered AIA to cease infringing activities prior to this action. AIA's argument of non-infringement based upon evidence of trace amounts of titanium oxide is unreasonable. Thus, the Court concludes that based on the evidence presented at trial, AIA's theories of non-infringement are not objectively reasonable.

Regarding AIA's prior public use claim, AIA contends that "its invalidity claim premised upon prior public use forecloses a finding of objective recklessness." (Docket Entry No. 407-1 at 10). After a review of the record, the Court concludes that AIA failed to present sufficient evidence of prior public use at Empire Mine or otherwise. There is insufficient evidence in the record to prove

clearly and convincingly that the tests at Empire Mine were public, commercial or anything more than experimental and confidential. The record reflects sufficient evidence that the tests were not public and pertained only to research related to the Claims in Magotteaux's patent. The Court concludes that AIA was objectively reckless in its claim of prior public use.

Regarding AIA's improper recapture claim, AIA argues that Magotteaux cannot meet its burden to prove recklessness by clear and convincing evidence. (Docket Entry No. 407-1 at 5). Specifically, AIA alleges that Magotteaux "fail[ed] to present any evidence showing why at the time it began infringement AIA could not reasonably have determined that RE998 was invalid for improper recapture, [and] . . . . [Magotteaux] presented no evidence specifically addressing the issue of whether AIA's defenses or claims were objectively reckless." (Docket Entry No. 407-1 at 5-6). Yet, Magotteaux contends that "the Court (and the jury) were presented with sufficient evidence to establish that AIA's recapture position, taken in the context of the totality of the circumstances which included six liability avoiding theories, was objectively reckless." (Docket Entry No. 457 at 6). Additionally, Magotteaux asserts that "[t]he existence of a previously successful, but now rejected ruling on 'recapture invalidity is not a *per se de jure* defense to willfulness. To find otherwise is unprecedented." (Docket Entry No. 457 at 6). In light of the evidence presented at trial, the Court concludes that the improper recapture theory is unreasonable and that AIA acted despite an objectively high likelihood that its actions constituted infringement.

Thus, the Court finds that Magotteaux did meet its burden to show an objectively high likelihood that AIA's actions constituted infringement. Further, the Court finds sufficient evidence to support the jury's finding that AIA knew or should have known of an obvious risk of infringement. The evidence sufficiently supports the jury verdict because the proof shows that after

years of testing by Magotteaux, AIA deliberately copied the technology and produced SinterCast in a matter of months. The evidence provides sufficient proof that AIA protested Magotteaux's patent and then went ahead and copied the technology after the patent office rejected its protest. As such, the Court will not disturb the jury's finding on willfulness and AIA's motion for judgement as a matter of law as to willfulness should be denied. See i4i Ltd. Partnership, 598 F.3d at 860 (ruling that substantial evidence supported the jury's finding of willfulness where alleged infringer had knowledge of the patent, took no steps to investigate or avoid infringement, and openly sought to the use of the sales of its accused product to make the patentee's product obsolete).

After finding willfulness, section 284 provides the Court the discretion to enhance damages up to three times the compensatory award. 35 U.S.C. § 284. Although a willfulness finding does not mandate the award of enhanced damages, the award of enhanced damages is appropriate where the infringement was willful. Modine Mfg. Co. v. Allen Grp., 917 F.2d 538, 543 (Fed. Cir. 1990); Great N. Corp. v. Davis Core & Pad Co., 782 F.2d 159, 166 ( Fed. Cir. 1986). The Court considers "the egregiousness of the defendant's conduct based on all the facts and circumstances" to determine whether to award enhanced damages. Read Corp. v. Porter, Inc., 970 F.2d 816, 826 (Fed. Cir. 1992) (overruled on other grounds). The factors the Court considers before enhancing damages are:

> 1. Whether the infringer deliberately copied the ideas or design of another;
>
> 2. Whether the infringer, when he knew of the other's patent protection, investigated the scope of the patent and formed a good-faith belief that it was invalid or that it was not infringed;
>
> 3. The infringer's behavior as a party to the litigation;
>
> 4. [AIA's] size and financial condition;
>
> 5. Closeness of the case;

6. Duration of [AIA's] misconduct;

7. Remedial action by [AIA];

8. [AIA's] motivation for harm;

9. Whether defendant attempted to conceal its misconduct.

Read, 970 F.2d at 827.

The Read factors favor the Court's prior determination to award enhanced damages of twice the compensatory damages. Based upon its prior analysis of willfulness, the Court finds that AIA's acted to deliberately copy the designs of another with intimate knowledge of the scope of the patent to realize that its actions constituted infringement. In addition, AIA continued its infringement actions despite an order to cease from the International Trade Commission. AIA failed to took any remedial action to rectify the infringement and AIA's motivation for harm was evident at trial. In fact, AIA's numerous and unreasonable defenses and theories of non-infringement suggest that AIA was attempting to conceal its infringement. Magotteaux prevailed on all claims and the Court concludes that from the evidence in the record was clear and convincing. Moreover, the evidence at trial showed that AIA's 2011 revenues totaled $220 million dollars. This figure shows AIA can likely withstand an award of enhanced damages. Thus, all of the Read factors favor an award of enhanced damages.

Taking into account the jury verdict, the Court's finding of willfulness, and the Read factors, the Court concludes that enhanced damages are appropriate in this action. Yet, the Court does not find AIA's actions sufficiently egregious to justify a full trebling of damages. Chisum v. Brewco Sales & Mfg., 726 F.Supp. 1499 (W.D. Ky. 1989) ("The lost profits will however be doubled rather than tripled, since we find that Brewer's action were willful, but not so egregious as to warrant

trebling of damages."). Thus, the Court's award of twice that of compensatory damages in enhanced damages to Magotteaux (Docket Entry No. 390) should stand.

## B. AIA's Rule 59 Motion on Exceptional Case

Under Rule 59(e) a party may seek to alter or amend a judgment by filing a motion "no later than 28 days after the entry of the judgment." Fed. R. Civ. P. 59(e). This is an "extraordinary" motion and "is seldom granted because it contradicts notions of finality and repose." Waiters v. City of Cleveland, No. 1:08-cv-2006, 2009 WL 3063384, at *1 (N.D. Ohio Sept. 24, 2009). The Sixth Circuit recognizes only specific grounds for granting a motion to alter or amend under Rule 59. The Court may only grant a Rule 59 motion when there is: (1) a clear error of law; (2) newly discovered evidence; (3) an intervening controlling law; or (4) to prevent manifest injustice. Intera Corp. v. Henderson, 428 F.3d 605, 620 (6th Cir. 2005) (citing GenCorp, Inc. v. Am. Int'l Underwriters, 178 F.3d 804, 834 (6th Cir. 1999) (citations omitted)).

Under Rule 59(e), a motion to alter or amend "is not an opportunity to re-argue a case." Sault Ste. Marie Tribe of Chippewa Indians v. Engler, 146 F.3d 367, 374 (6th Cir. 1998). The Court must balance the "judicial imperative of bringing litigation to an end" with that of rendering justice. GenCorp, 178 F.3d at 834 ("A decision to reopen this case would subvert the judicial imperative of bringing litigation to an end and would serve no need other than to correct what has-in hindsight-turned out to be a poor strategic decision by [Defendant]."). Here, the Court concludes that there is not an adequate basis to vacate the finding of exceptionalness in this action.

Section 285 permits the Court to award attorneys' fees to the prevailing party upon finding that a case is "exceptional." An exceptionalness finding is warranted "when there has been some material inappropriate conduct related to the matter in litigation, such as willful infringement, fraud

or inequitable conduct in procuring the patent, misconduct during litigation, vexatious or unjustified litigation, conduct that violates Fed. R. Civ. P. 11, or like infractions." iLOR, LLC v. Google, Inc., 631 F.3d 1372, 1377 (Fed. Cir. 2011) (quoting Brooks Furniture Manufacturing, Inc. v. Dutailier International, Inc., 393 F.3d 1378, 1381 (Fed. Cir. 2005)). Additionally, "absent misconduct during patent prosecution or litigation, sanctions may be imposed against a patent plaintiff 'only if both (1) the litigation is brought in subjective bad faith, and (2) the litigation is objectively baseless.'" iLOR, 631 F.3d at 1376-77 (quoting Brooks, 393 F.3d at 1381).

"Under this exacting standard, the plaintiff's case must have no objective foundation, and the plaintiff must actually know this. Both the objective and subjective prongs of Brooks Furniture 'must be established by clear and convincing evidence.' iLOR, 631 F.3d at 1377 (quoting Brooks Furniture, 393 F.3d at 1382). "Th[is] objective baselessness standard for enhanced damages and attorneys' fees against a non-prevailing plaintiff . . . is identical to the objective recklessness standard for enhanced damages and attorneys' fees against an accused infringer for § 284 willful infringement actions under [Seagate]." iLOR, 631 F.3d at 1377.

AIA contends that the Court's "finding of exceptional case is predicated completely upon the erroneous finding of wilfulness" because "[a]lthough willful infringement is a recognized basis for the finding of an exceptional case, this is not an exceptional case because this is not a case of willfulness." (Docket Entry No. 407-1 at 15). Additionally, AIA contends that the action was not "objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits" so as to warrant the finding of an "exceptional case." (Docket Entry No. 407-1 at 15) (citing Prof. Real Estate Invetors, Inc. v. Columbia Pictures Indus., Inc., 508 U.S. 49, 60 (1983)).

Magotteaux contends that the Court's finding of exceptionalness is merited. Magotteaux cites specific instances of AIA's conduct throughout litigation for its contentions that the case is

exceptional, for example:

> (1) AIA withheld documents from production that showed AIA was making bids to sell infringed products;
>
> (2) AIA vigorously pursued the inequitable conduct claim but later conceded it had no support for the claim;
>
> (3) AIA never supplemented the interrogatories as required before trial;
>
> (4) AIA never set forth the prior art reference and witness to be relied on for its invalidity claims as required;
>
> (5) AIA engaged in motion practice that was not legally supportable and superfluous;
>
> (6) AIA argued to present witnesses it never presented at trial.

(Docket Entry No. 457 at 15-17).

This controversy does not involve simple negligence or erroneous arguments made in good faith. AIA's conduct clearly supports a finding of an exceptional case because AIA knew that its actions constituted an objectively high likelihood of infringement and a reasonable litigant would not have expected to succeed on the merits of its claims or defenses. Based on the Court's prior finding of willful infringement under Seagate, the Court concludes that this case meets the exceptionalness standard under § 285.

### C. Motion for New Trial

On a motion for a new trial, the Court must determine if the jury could reasonably reach the verdict based upon the evidence. Powers v. Bayliner Marine Corp., 83 F.3d 790, 798 (6th Cir. 1996). A trial court cannot substitute its judgment on credibility for the jury's determinations. Anderson v. Conwood Co., 34 F. Supp.2d 650, 653 (W.D. Tenn. 1999) (citing Farber v. Massillon Bd. of Educ., 917 F.2d 1391, 1395 (6th Cir. 1990)). The Court is not to set aside the jury verdict absent a showing of a "'seriously erroneous result' as evidenced by: (1) the verdict being against the weight of the evidence; (2) the damages being excessive; or (3) the trial being unfair to the moving

party in some fashion, i.e., the proceedings being influenced by prejudice or bias." Holmes v. City of Massillon, Ohio, 78 F.3d 1041, 1046 (6th Cir. 1996). The evidence is also reviewed "most strongly in a light in favor of the verdict." Ross v. Meyers, 883 F.2d 486, 488 (6th Cir. 1989).

Here, the Court concludes that based upon the review of the record, the verdict is not against the weight of the evidence and is sufficiently supported by the record. In its motion and reply, AIA does not present grounds for a new trial. See (Docket Entry Nos. 407-1 & 461-1). From the Court's review of the record, sufficient evidence exist to support the jury's verdict of willfulness. Accordingly, AIA's motion for a new trial in this action should be denied.

For the reasons stated above, the Court should deny AIA's motions for judgment as a matter of law of the willfulness finding, for amendment of the judgment, and for a new trial.

An appropriate Order is filed herewith.

**ENTERED** this 21st day of September, 2012.

WILLIAM J. HAYNES, JR.
Chief Judge
United States District Court